**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 22-cv-00790-CMA-KLM

NORTHWEST BUILDING COMPONENTS, INC.,

    Plaintiff,

v.

PHILIP D. ADAMS,

    Defendant.

---

**ORDER GRANTING MOTION TO TRANSFER CASE TO THE DISTRICT OF IDAHO**

---

This matter is before the Court on Defendant's Motion to Dismiss for Lack of Jurisdiction, or in the Alternative, Motion to Transfer Venue (the "Motion"). (Doc. # 15.) For the following reasons, the Motion is granted, and this case is transferred to the United States District Court for the District of Idaho.

### I.    BACKGROUND

**A.    BACKGROUND**

This is a dispute between a former employer and employee. On March 30, 2022, Plaintiff Northwest Building components, Inc. ("Plaintiff" or "Northwest") commenced this action against Defendant Philip D. Adams ("Defendant" or "Mr. Adams"). (Doc. # 1.) Northwest is in the business of "manufacturing, marketing, selling, and distributing trusses; roof, floor and stair components; framing; siding and other building materials and supplies, and providing services with respect thereto." (Doc. # 1 ¶ 8.) Further,

Northwest "supplies high quality roof and floor trusses for commercial, residential, and agricultural buildings and specializes in all areas of wood construction." (*Id.*)

Mr. Adams commenced his employment with Northwest in approximately October 2004, and he was a shareholder from 2009 through June 1, 2020. (Doc. # 1 at ¶ 13.) On June 1, 2020, Mr. Adams entered into a Stock Purchase Agreement whereby Kodiak Building Partners, LLC purchased all outstanding shares of capital stock of Northwest, including shares owned by Mr. Adams. (*Id.* at ¶ 14.) At that time, Mr. Adams became the General Manager of Northwest. (*Id.* at ¶ 15.)

On June 1, 2020, in connection with his new role as General Manager, Mr. Adams signed an Employment Agreement, which set forth his salary, benefits, and obligations to maintain confidentiality. (Doc. # 1 at ¶¶ 17–18; Doc. # 1-1.) A separate Restrictive Covenant Agreement ("RCA") is attached as Exhibit A to the Employment Agreement. (Doc. # 1 at ¶ 21; Doc. # 1-1 at 18.) Northwest alleges, *inter alia*, that Mr. Adams breached the Employment Agreement by working for a competitor, misappropriated trade secrets, and has engaged in conversion and unfair competition. (Doc. # 1.) Northwest brings claims for Breach of Contract, Misappropriation of Trade Secrets under federal and state law, Conversion, Civil Theft, Tortious Interference with Contract, Tortious Interference with Prospective Business Advantage, Unjust Enrichment, Unfair Competition, and Common Law Unfair Competition. (Doc. # 1 at 13–19.)

### B.     JURISDICTION ALLEGATIONS

Mr. Adams moved to dismiss this action for lack of jurisdiction and for improper venue. (Doc. # 15.) Northwest is a Washington corporation with its principal place of business in Idaho. (Doc. # 1 at ¶ 4.) Mr. Adams is a resident and citizen of Idaho. (*Id.* at ¶ 5.) Mr. Adams has lived in Idaho for the last 11 years, and he lived in Washington for 49 years prior to moving to Idaho. (Doc. # 16 at ¶ 22.) Mr. Adams has never lived in Colorado, has never owned property in Colorado, has never operated a business or had a license in Colorado, and has no immediate family in Colorado. (*Id.* at 22–26.) He has flown through Denver's airport occasionally, and he attended one trade show in Colorado and visited a facility in the last few months in connection with his current employment. (*Id.* at ¶ 27.)

The parties dispute which contract controls in this case, and the contracts contain different choice of forum clauses dictating where the action must be brought. Plaintiff alleges that the Court has personal jurisdiction over the parties, and venue is proper in the District of Colorado, because this action arises out the Employment Agreement and RCA. (Doc. # 1 at ¶ 7.) The Employment Agreement contains a forum selection clause providing that all lawsuits "shall be brought exclusively in the state or federal courts located in Denver, Colorado." (Doc. # 1 at ¶ 7; Doc. # 1-1 at 9 ¶ 13.) The RCA contains identical language. (Doc. # 1-1 at 24 ¶ 15.) As a result, Northwest argues that the Court has jurisdiction over Mr. Adams. (*Id.*)

Mr. Adams maintains that a subsequent Severance Agreement governs this action. (Doc. # 16 at ¶ 13.) The Severance Agreement was signed on November 4,

2021, after Mr. Adams resigned from Northwest. (Doc. # 17.) The Severance Agreement contains a "Choice of Law and Venue" paragraph which states that the agreement "shall be construed and interpreted in accordance with the laws of the State of Idaho, without regard to its conflict of laws rules. Venue shall be in the Idaho state or federal courts." (Doc. # 17 at ¶ 18.)

Further, the Severance Agreement states that Northwest and Mr. Adams are entering into the agreement to "resolve fully and finally potential disputes regarding Employee's employment" with Northwest. (Doc. # 17 at 1.) Like the Employment Agreement and the RCA, the Severance Agreement contains a provisions setting forth Defendant's obligations with respect to trade secrets and confidential information he learned during his employment. (*Id.* at 4–5.) The Severance Agreement also states that the agreement is "the entire agreement between the parties relating to the matters set forth herein. Except as provided herein, this Agreement supersedes any and all prior oral or written promises or agreements between the Parties." (Doc. # 17 at ¶ 16.)

## II. LEGAL STANDARD

Rule 12(b)(3) provides that a defendant may move to dismiss a complaint because of "improper venue." Fed. R. Civ. P. 12(b)(3). Once venue is challenged, it is the plaintiff's burden to show that venue is proper in the forum district. *See Gwynn v. TransCor Am., Inc.*, 26 F. Supp. 2d 1256, 1261 (D. Colo. 1998). "At the motion to dismiss stage, a plaintiff must present only a *prima facie* showing of venue." *Scott v. Buckner Co.*, 388 F. Supp. 3d 1320, 1324 (D. Colo. 2019). "[I]n reviewing a defendant's Rule 12(b)(3) motion to dismiss for improper venue, the Court may examine facts

outside of the complaint and must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Id.* (internal quotations omitted). Courts must "accept the well-pleaded allegations of the complaint as true to the extent that they are uncontested by the defendant's affidavits." *Id.* (quoting *Karl W. Schmidt & Assocs., Inc. v. Action Envtl. Sols., LLC*, No. 14–cv–00907–RBJ, 2014 WL 6617095, at *2 (D. Colo. Nov. 21, 2014)). "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's *prima facie* showing is sufficient notwithstanding the contrary presentation by the moving party." *Scott*, 388 F. Supp. 3d at 1324 (quotation marks and citations omitted).

### III. ANALYSIS

**A. THE COURT NEED NOT DETERMINE PERSONAL JURISDICTION BEFORE CONSIDERING VENUE**

Mr. Adams moves to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and pursuant to Rule 12(b)(3) for improper venue. (Doc. # 15.) Alternatively, Mr. Adams requests that the Court transfer the action to the United States District Court for District of Idaho pursuant to 28 U.S.C. § 1404(a). (*Id.* at 15.)

"[T]here is no mandatory 'sequencing of jurisdictional issues.'" *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)). The Supreme Court has explained:

> The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum. On the other hand, neither personal jurisdiction nor venue is fundamentally preliminary in the sense that subject-matter jurisdiction is, for both are personal

privileges of the defendant, rather than absolute strictures on the court, and both may be waived by the parties. Accordingly, when there is a sound prudential justification for doing so, we conclude that a court may reverse the normal order of considering personal jurisdiction and venue.

*Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979) (internal citations omitted). Thus, courts may properly consider venue arguments before deciding personal jurisdiction. *Wardell v. Am. Dairy Goat Ass'n*, 21-cv-01186-PAB-NRN, 2022 WL 375577, at *4 (D. Colo. Feb. 8, 2022), *report and recommendation adopted,* 21-cv-01186-PAB-NRN, 2022 WL 596276 (D. Colo. Feb. 28, 2022) (deciding venue before personal jurisdiction); *Aspen Corps., Inc. v. Gorman*, 18-cv-01325-CMA-SKC, 2019 WL 1281211, at *3 (D. Colo. Mar. 20, 2019) (same).

In this case, as discussed more fully below, venue is obviously improper in the District of Colorado. It is the Court's practice to seek efficient outcomes. Accordingly, the Court finds that it is more efficient to simply transfer the litigation to the District of Idaho rather than dismiss this action based on lack of personal jurisdiction or improper venue. *See Leroy*, 443 U.S. at 180–81 (where it is clear that venue is improper, court can determine venue without discussing personal jurisdiction).

**B.     Choice of Law**

As a threshold matter, the Court must resolve which law applies. "There is a distinction . . . between what law governs the enforceability of [a] forum selection clause and what law governs the interpretation of [a] forum selection clause." *State ex rel. Balderas v. Real Est. L. Ctr., P.C.*, 430 F. Supp. 3d 900, 919 (D.N.M. 2019) (collecting cases). Enforceability of a forum selection clause is governed under federal rather than state law. *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 28, 108 S.Ct. 2239, 2243, 101

6

L.Ed.2d 22 (1988); *Postnet Int'l Franchise Corp. v. Wu*, 521 F. Supp. 3d 1087, 1094–95 (D. Colo. 2021).

However, "[c]ourts have split over the question of whether the interpretation of forum-selection provisions is a procedural question governed by federal law or a substantive question governed by state law." *Hot Shot Servs., Inc. v. Nanney*, 9-cv-629-WJ-LAM, 2010 WL 11493293, at *2 (D.N.M. Apr. 23, 2010) (collecting and examining cases in the Tenth Circuit and elsewhere). Typically, when courts interpret a contract, it applies the law the parties selected in their contract. *Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 427 (10th Cir. 2006); *Hot Shot Servs., Inc.*, 2010 WL 11493293, at *2 (examining cases and determining that the Tenth Circuit would honor law set forth in contract).

Defendant maintains that Idaho law governs this dispute and interpretation of the Severance Agreement. (Doc. # 15 at 11.) In contrast, Plaintiff argues that Colorado law applies to this contractual dispute and should apply. (Doc. # 34 at 15.) However, both parties agree that it does not matter which law the Court applies, because the result will be the same. (Doc. # 15 at 11 n.3; Doc. # 34 at 7 n.1.) The Court agrees. The Court's analysis is the same whether federal law, Colorado law, or Idaho law applies. Thus, the Court will not engage in an unnecessary choice of law analysis. *See, e.g.*, *Postnet Int'l Franchise Corp.*, 521 F. Supp. 3d at 1094–95 (noting that regardless of the applicable law, the result would be the same); *see also Wood v. Mid-Valley Inc.*, 942 F.2d 425, 427 (7th Cir. 1991) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies. We are busy enough without creating issues that are unlikely to affect the outcome of the case . . . .").

**C.      VENUE IS IMPROPER IN THE DISTRICT OF COLORADO**

"If a defendant consents to personal jurisdiction in a particular forum, then the court need not inquire any further." *First of Denver Mortgage Investors v. Riggs*, 564 F. Supp. 1513, 1515 (D. Colo. 1983). "Forum selection provisions are '*prima facie* valid' and a party resisting enforcement carries a heavy burden of showing that the provision itself is invalid due to fraud or overreaching or that enforcement would be unreasonable and unjust under the circumstances." *Riley v. Kingsley Underwriting Agencies, Ltd*., 969 F.2d 953, 957 (10th Cir. 1992). However, where one contract supersedes another contract, the Court applies the forum selection clause of the later contract. *See, e.g.*, *BluSky Restoration Contractors, LLC v. Whitman-Greenhill, LLC*, 18-cv-00632-REB-NYW, 2018 WL 3804098, at *3 (D. Colo. Aug. 10, 2018).

Further, the issues concerning venue in this case implicate the interpretation of the competing contracts. The interpretation of the terms of a contract is decided by the court as a matter of law unless the meaning is both unclear and dependent on conflicting testimony. *FirsTier Bank, Kimball, Neb. v. F.D.I.C.*, 935 F. Supp. 2d 1109, 1124 (D. Colo. 2013); *Greenwald v. W. Sur. Co.*, 164 Idaho 929, 939, 436 P.3d 1278, 1288 (2019). The contract must be interpreted as a whole, and the terms of the contract must be given their plain and ordinary meaning. *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009); *Potlatch Educ. Ass'n v. Potlatch Sch. Dist. No. 285*, 148 Idaho 630, 633, 226 P.3d 1277, 1280 (2010).

Plaintiff argues that a novation has not occurred, and, therefore, the prior agreements are still in effect and were not superseded by the Severance Agreement. "A

novation extinguishes a previously existing contract by substituting a new contract or obligation." *Phoenix Power Partners, L.P. v. Colorado Pub. Utilities Comm'n*, 952 P.2d 359, 364 (Colo. 1998). "[I]f the essential elements or terms of the contract have been transformed, a new contract will be deemed to supersede the old. The specific facts surrounding the contractual relationship dictate whether or not terms are essential to the agreement." *Id.* at 365. Further, a court can determine intent of the parties based on unambiguous terms set forth in a new agreement. *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1237 (11th Cir. 2008) (noting that "[w]here the terms of a written agreement are not in doubt, the question of whether it effects a novation is one of law for the court").

For a new contract to act as a novation and extinguish a party's obligations under a prior agreement, four requirements must be met: "a previous valid obligation, an agreement between the parties to abide by the new contract, a valid new contract, and the extinguishment of the old obligation by the substitution of the new one." *Moffat Cty. State Bank v. Told*, 800 P.2d 1320, 1323 (Colo. 1990) (citation omitted). In this case, the parties do not dispute that all three contracts are valid, nor do they dispute that they have an agreement to abide by the newer Severance Agreement. Thus, the only issue for the Court to consider is whether the new contract—the Severance Agreement—extinguished the obligations set forth in the Employment Agreement and RCA. The Court finds that it does.

First, the plain language of the Severance Agreement demonstrates that the parties intended for the Severance Agreement to supersede all prior agreements,

9

including the Employment Agreement and the RCA. The Severance Agreement states that the purpose of the agreement is to "resolve fully and finally potential disputes regarding [Mr. Adams's] employment" with Northwest. (Doc. # 17 at 1.) Further, the Severance Agreement also states that the agreement is "the entire agreement between the parties relating to the matters set forth herein. Except as provided herein, this Agreement **supersedes any and all prior oral or written promises or agreements between the Parties**." (Doc. # 17 at ¶ 16) (emphasis added.)

As noted by Mr. Adams, this clause serves as a "merger" clause, meaning that it establishes that the parties have agreed that the Severance Agreement—signed two years after the Employment Agreement—contains the parties' entire agreement. The purpose of this merger clause is to "establish that the contract contains the parties' entire agreement." *Howard v. Perry*, 141 Idaho 139, 142, 106 P.3d 465, 468 (2005); *Pro. Bull Riders, LLC v. Perfect Blend Int'l, LLC*, 14-cv-03510-CMA-KLM, 2016 WL 54115, at *4 (D. Colo. Jan. 5, 2016) ("Merger clauses, such as the one present in the [agreement], demonstrate the intent of the parties to represent a final and complete integration of the agreement."). "To hold otherwise would require the parties to list in the contract everything upon which they had not agreed and hope that such list covers every possible prior or contemporaneous agreement that could later be alleged." *Howard*, 141 Idaho at 142. In this case, the merger clause is broad enough to extinguish obligations set forth in all prior agreements.

Plaintiff argues that the Severance Agreement is limited because it states that it relates to the "the matters set forth herein." However, Plaintiff's argument ignores the

10

following sentence, which states that the Severance Agreement "supersedes **all** prior oral or written agreement **between the parties**." (Doc. # 17 at ¶ 16) (emphasis added). While the preceding sentence is limited to the Severance Agreement, the following sentence is not. The second sentence states that it supersedes *all* prior agreements between the parties, not just the prior agreements related to the matters set forth in the Severance Agreement. Based on the plain language of the Severance Agreement, the merger clause explicitly superseded all prior written agreements. *See, e.g.*, *Young v. Element Brand Holdings, LLC*, 20-cv-1953-SAL-TER, 2021 WL 1431206, at *6 (D.S.C. Feb. 2, 2021), *report and recommendation adopted,* 20-cv-1953-SAL, 2021 WL 1138023 (D.S.C. Mar. 25, 2021), *appeal dismissed,* 21-1464, 2021 WL 5068898 (4th Cir. June 2, 2021) (collecting cases and noting certain explicit language in merger clauses will clearly extinguish prior contracts). Thus, based on the plain language of the Severance Agreement, the agreement represents the entire agreement of the parties, and the parties intended for the Severance Agreement to supersede the Employment Agreement and the RCA.

Second, the Severance Agreement is not as limited as Plaintiff suggests. Indeed, "the matters set forth herein" in the Severance Agreement include the same subject matters as those set forth in the Employment Agreement and RCA. For starters, the Employment Agreement contains a confidentiality, non-disparagement, and assignment of IP provision, setting forth confidentiality requirements related to Mr. Adams's employment. (Doc. # 1-1 at 5 ¶ 10.) The RCA also sets forth confidentiality

requirements. (Doc. # 1-1 at 18, 20 ¶ 3.) The Employment Agreement and RCA also discuss obligations related to trade secrets.

The later Severance Agreement also contains these same terms and provisions, which are broad enough to extinguish the provisions set forth in the Employment Agreement and RCA. For example, the Severance Agreement contains confidentiality provisions regarding nondisclosure of information Mr. Adams learned while he was employed with Plaintiff, including trade secrets. (Doc. # 17 at 4–5 ¶ 7.) The Severance Agreement also contains a non-disparagement clause. (*Id.* at 5 ¶ 9.) Further, the Severance Agreement requires Mr. Adams to return all property and information he obtained from Northwest, including any electronic evidence. (*Id.* at 5–6 at ¶ 11.) These broad provisions—which are the same terms contained in all three agreements—are further evidence that the Severance Agreement was intended to supersede the Employment Agreement and the Restrictive Covenant Agreement.

Accordingly, based on the plain language of the Severance Agreement, the Court finds that the Severance Agreement supersedes the Employment Agreement and RCA. Accordingly, based on the forum selection clause in the Severance Agreement, venue is not proper in the District of Colorado.

## D.  TRANSFER TO THE DISTRICT OF IDAHO IS WARRANTED

When venue in the district in which a suit is filed is found to be improper, Section 1406(a) provides that the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." 28 U.S.C. § 1406(a); *Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1209 n.3 (10th Cir.

2001). The Tenth Circuit has "interpreted the phrase 'if it is in the interest of justice' to grant the district court discretion in making a decision to transfer an action or instead to dismiss the action without prejudice." *Trujillo v. Williams*, 465 F.3d 1210, 1222–23 (10th Cir. 2006). Ordinarily, transfer is "in the interest of justice because normal dismissal of an action that could be brought elsewhere is 'time consuming and justice defeating.'" *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467, 82 S. Ct. 913, 916, 8 L. Ed. 2d 39 (1962).

In the interest of judicial economy and efficiency, the Court transfers this action to the United States District Court for the District of Idaho pursuant to Section 1406(a). Transfer of the suit is in the interest of justice because the Severance Agreement states that "[v]enue shall be in the Idaho state or federal courts." (Doc. # 17 at 6 ¶ 18.) Further, outright dismissal is not in the interest of justice in this case because Plaintiff's arguments in support of venue in the District of Colorado are not so patently improper as to justify outright dismissal, and it would be justice-defeating to dismiss an action that could be brought elsewhere. *Goldlawr, Inc.*, 369 U.S. at 467.

## IV.    CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

- Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or Improper Venue, or in the Alternative, Motion to Transfer Venue (Doc. # 15) is GRANTED as stated herein; and

- This action shall be TRANSFERRED to the United States District Court for the District of Idaho.

The Clerk is directed to transfer the case to the United States District Court for the District of Idaho and close this case.

DATED: May 26, 2022

                                            BY THE COURT:

*[signature]*
CHRISTINE M. ARGUELLO
United States District Judge